**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-4217**

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

QUILLAN INMAN,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  Louise W. Flanagan, District Judge.  (7:22-cr-00007-FL-1)

———————

Submitted:  November 18, 2025                              Decided:  June 5, 2026

———————

Before WYNN, HEYTENS, and BERNER, Circuit Judges.

———————

Affirmed in part, vacated in part, and remanded by unpublished opinion. Judge Berner authored the opinion, in which Judge Wynn and Judge Heytens joined.

———————

**ON BRIEF:**  Thomas R. Wilson, GREENE WILSON CROW & SMITH, PA, New Bern, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, Katherine S. Englander, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

BERNER, Circuit Judge:

A jury found Quillan Inman guilty of a single count of being a felon in possession of a firearm. The district court sentenced Inman to 100 months' imprisonment, applying a four-point sentencing enhancement for possession of a firearm in connection with a separate felony offense. On appeal, Inman challenges his conviction on the basis that certain evidence introduced by the Government at trial should have been suppressed. He also argues that the district court erred by failing to find a predicate felony offense when it applied the sentencing enhancement.

We conclude that Inman waived his suppression challenge because he conceded it before the district court. We agree with Inman, however, that the district court erred when it applied the sentencing enhancement. Thus, though we uphold his conviction, we vacate Inman's sentence and remand to the district court for resentencing.

## I.   Background

Early one morning in late 2020, Quillan Inman was riding as a passenger in the front seat of a Toyota Corolla when the Corolla passed a convenience store in Robeson County, North Carolina. Detectives Jeremy Hunt and Brent Chavis from the Robeson County Sherriff's Office (collectively, the Detectives) were parked in an unmarked police vehicle in the parking lot of the convenience store surveilling a suspect. The Detectives noticed the Corolla turn off the road where they believed the suspect was living, so they pulled out of the convenience store parking lot and began to follow the Corolla.

The Detectives observed the Corolla cross over the centerline of the road, a moving traffic violation. They then activated their police lights and continued pursuing the Corolla. The Corolla sped up and the Detectives turned on their police siren. A chase ensued. Eventually, the Detectives overtook the Corolla and blocked its path.

Unable to drive further, the driver of the Corolla got out of the car and fled down a nearby dirt road. Detective Chavis exited the police vehicle and chased the driver on foot. Detective Hunt then also exited the police vehicle and approached the passenger side of the Corolla, where Inman remained seated. As he neared the Corolla, Detective Hunt noticed a firearm laying on the ground. He ordered Inman to show his hands, and Inman promptly complied.

Detective Hunt then opened the door of the Corolla and instructed Inman to get out. As Inman began to stand, Detective Hunt noticed the handle of a second firearm emerging from the left front pocket of Inman's sweater. Detective Hunt placed Inman in handcuffs, immediately seized the firearm, and searched his person. During the search, Detective Hunt discovered cash, a substance he suspected to be crack cocaine, Suboxone strips,[1] and other prescription medications.

After Detective Chavis returned to the scene, Detective Hunt searched the Corolla. Inside, he discovered a loaded shotgun on the backseat floorboard and a handgun in the trunk.

---

[1] Suboxone is an FDA-approved prescription medication used to treat opioid use disorder or OUD.

3

## II.  Procedural History

Inman was indicted in the Eastern District of North Carolina for a single count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924.

Before trial, Inman moved to suppress the evidence discovered during the traffic stop. Although he conceded that the traffic stop itself had been lawful, Inman challenged the scope of the subsequent search. The district court denied Inman's motion to suppress, and the case proceeded to trial before a jury.

At trial, Inman testified that he had been a paying rideshare passenger in the Corolla at the time of the traffic stop. He further testified that the Detectives became frustrated with him when he was unable to tell them the name of the driver. Inman claimed that he had not been in possession of a firearm. Rather, he claimed that Detective Hunt planted a firearm on him and that he had been unaware that there were any firearms in the vehicle. Following the close of the Government's case, Inman moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The district court denied Inman's motion and the jury returned a guilty verdict.

Prior to sentencing, the United States Probation Office prepared a final presentencing report (PSR) which included details about the controlled substances Detective Hunt found on Inman's person during the search. The PSR recommended that the district court apply a four-point sentencing enhancement for possession of a firearm with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense under Section 2K2.1(b)(6)(B) of the United States

4

Sentencing Guidelines.[2] Prior to sentencing, Inman objected to the application of this enhancement. He argued that the Suboxone strips and other medications that Detective Hunt discovered during the search had been lawfully prescribed to him and thus the firearm could not have been used or possessed in connection with another felony offense.

Inman renewed his objection to the application of the Section 2K2.1(b)(6)(B) sentencing enhancement during his sentencing hearing. The district court did not adopt the factual findings in the PSR. It concluded, however, that Inman had been in "[p]ossession of the firearm . . . in connection with another felony offense," and applied the enhancement. Parties' Joint Appendix (J.A.) 491.

Without the sentencing enhancement, Inman's applicable Sentencing Guidelines range would have been 63 to 78 months. Because the district court applied the enhancement, however, the range was 97 to 121 months. The district court imposed a sentence of 100 months' imprisonment, which was at the low end of the range with the enhancement.

Inman timely appealed. We exercise jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

---

[2] Amendment 834 to the Sentencing Guidelines redesignated this enhancement as Section 2K2.1(b)(7)(B), effective November 1, 2025. At the time of sentencing, however, the Guidelines enhancement was designated as Section 2K2.1(b)(6)(B). We reference this enhancement by the relevant section number in place at the time of Inman's sentencing. *See United States v. Lewis*, 606 F.3d 193, 198–99 (4th Cir. 2010); *see also* U.S.S.G. § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.").

III. Motion to Suppress

We first turn to Inman's challenge to his conviction. Inman argues that the traffic stop was unlawful and therefore any evidence obtained pursuant to the stop should have been suppressed. Because Inman's conviction was predicated upon this evidence, he urges this court to overturn his conviction and to remand for a new trial. The Government counters that Inman waived this argument. We agree.

Waiver is the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). "Waiver is to be distinguished from 'forfeiture,' which is 'the failure to make the timely assertion of a right.'" *United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014) (citing *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004)). An argument is waived when it has been expressly and clearly deserted. *United States v. Boyd*, 5 F.4th 550, 555 (4th Cir. 2021). This court may not review a waived argument, "even for plain error." *Robinson*, 744 F.3d at 298 (citing *Olano*, 507 U.S. 731).

Before the district court, Inman also sought to suppress the evidence obtained during the search following the traffic stop, although on different grounds. In his motion to suppress, Inman conceded that the traffic stop had been lawful because the "traffic infraction justified stopping the car," though he contested the scope of the search. J.A. 25. The district court denied Inman's suppression motion, finding that Detective Hunt had reasonable suspicion to search Inman after observing a firearm on his person.

On appeal, Inman contends for the first time that the traffic stop had been unlawful. He argues that if the stop was unlawful, then the subsequent search was also unlawful and any evidence discovered during that search must be suppressed. We conclude that Inman

6

waived this argument when he conceded the lawfulness of the traffic stop before the district court. This concession "demonstrates a clear abandonment" of the argument that Inman now raises on appeal. *Boyd*, 5 F.4th at 555. Arguments waived before the district court may not be raised on appeal. *See United States v. Claridy*, 601 F.3d 276, 284 n.2 (4th Cir. 2010) (declining to review waived suppression argument that "warrant was not in fact supported by probable cause" because defendant admitted before the district court "that the warrant was supported by probable cause" (citing *Olano*, 507 U.S. at 732–33)). Accordingly, we affirm Inman's conviction and move to the second issue on appeal, Inman's sentence.

## IV. Application of Sentencing Enhancement

Inman argues that the district court erred in applying a sentencing enhancement for possession of a firearm in connection with another felony, under United States Sentencing Guidelines Section 2K2.1(b)(6)(B), because the district court failed to make the requisite predicate findings of fact. The erroneous application of a sentencing enhancement is a "significant procedural error" that, absent harmless error, requires us to vacate a sentence and remand for resentencing. *United States v. Evans*, 90 F.4th 257, 262 (4th Cir. 2024). In determining whether a "district court erred in applying a sentencing enhancement, we review the court's legal conclusions *de novo* and factual findings for clear error." *United States v. Cisson*, 33 F.4th 185, 189 (4th Cir. 2022) (citing *United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006)).

The district court "must make factual findings, as appropriate or necessary to carry out its sentencing function[.]" *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)

(citing 18 U.S.C. § 3553(c)). We do not presume "that, when imposing a sentence, the district court has silently adopted arguments presented by a party." *United States v. Carter*, 564 F.3d 325, 329 (4th Cir. 2009). To the contrary, the district court "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007).

Sentencing Guidelines Section 2K2.1(b)(6)(B) permits a district court to increase a defendant's offense level if the district court concludes that the defendant "used or possessed any firearm or ammunition in connection with another felony offense." *Cisson*, 33 F.4th at 189 (quoting U.S.S.G. § 2K2.1(b)(6)(B) (current version at § 2K2.1(b)(7)(B))). The Government bears the burden to prove by a preponderance of the evidence that the defendant possessed a firearm "in connection with" another felony offense that the firearm "facilitated, or had the potential of facilitating[.]" *United States v. Jenkins*, 566 F.3d 160, 162 (4th Cir. 2009) (quoting U.S.S.G. § 2K2.1 cmt. n.14(A) (current version at cmt. n.13(A))). The Government cannot meet its burden to establish this "in connection with" requirement "if the firearm was present due to mere 'accident or coincidence.'" *Id.* at 163 (quoting *United States v. Blount*, 337 F.3d 404, 411 (4th Cir. 2003)). "Rather, the firearm must have 'had some purpose or effect with respect to the other [felony] offense.'" *Cisson*, 33 F.4th at 189 (quoting *Jenkins*, 566 F.3d at 162).

In applying the Section 2K2.1(b)(6)(B) enhancement, a district court must identify a predicate felony that the firearm facilitated or could have facilitated. The district court did not do so. Rather, the district court simply stated summarily that Inman possessed "the

8

firearm . . . in connection with another felony offense," without specifying an offense. J.A. 491.

It is not sufficient for the district court to recite the words in the Sentencing Guidelines when applying the Section 2K2.1(b)(6)(B) enhancement. It must explain its rationale. *Cf. United States v. Bolden*, 964 F.3d 283, 287 (4th Cir. 2020) (considering application of sentencing enhancement based on predicate felony offense of illicit drug possession); *Jenkins*, 566 F.3d at 163 (same). Although the district court heard both Inman's and the Government's arguments, it did not explain which it credited. *See Carter*, 564 F.3d at 329. Thus, we are left to "guess at the district court's rationale, searching the record for statements by the Government or defense counsel or for any other clues that might explain" the district court's application of the enhancement. *Id.* at 329–30.

The Government contends that the district court implicitly presumed that a firearm found near illicit drugs was necessarily used to facilitate a felony drug trafficking offense. *See* U.S.S.G. § 2K2.1 cmt. n.14(B) (current version at cmt. n.13(B)). There is nothing in the record to indicate that the district court applied such a presumption or that the district court found that Inman possessed a felonious quantity of illicit drugs at the time of the search.

Nor is any predicate felony "so obvious from the record that we may assume the district court's fact-finding role ourselves with any confidence." *Bolden*, 964 F.3d at 288. The district court neither adopted the facts described in the PSR concerning the drugs discovered on Inman's person at the time of the search nor did it make its own factual findings. *See United States v. Williams*, 152 F.3d 294, 300–01 (4th Cir. 1998) (explaining

9

that the district court must independently resolve contested fact issues by making its own findings or by expressly adopting the findings contained in the PSR). Because we cannot discern from the record the basis for the district court's application of the Section 2K2.1(b)(6)(B) enhancement, we agree with Inman that the district court erred.

This is not the end of our analysis, however. We must consider whether the error was harmless. *Cisson*, 33 F.4th at 190. A district court's imposition of a criminal sentence is harmless if both 1) the district court would have reached the same sentence had it not applied the enhancement, and 2) the sentence would be reasonable absent the enhancement. *Id.* On the record before us, it is not clear that "the district court would have reached the same result even if it had decided the Guidelines issue the other way[.]" *Id.* (quoting *United States v. Mills*, 917 F.3d 324, 330 (4th Cir. 2019)). Without the enhancement, Inman's Guidelines sentencing range would have been 63 to 78 months' imprisonment. Inman's 100-month sentence exceeds the upper threshold of this range. We therefore conclude that the sentencing error was not harmless.

Accordingly, we vacate Inman's sentence and remand to the district court for resentencing.

## V. Conclusion

For the reasons set forth above, we affirm Inman's conviction, vacate his sentence, and remand for resentencing.

*AFFIRMED IN PART, VACATED IN PART*
*AND REMANDED*